If it please the Court, Treva Hearn on behalf of William Hibbs. Your Honor, this case has a long history. I believe Justice Rehnquist said it best when he said the impact of the discrimination targeted by the FMLA which is based on mutually reinforcing stereotypes that only women are responsible for family caregiving and that men lack domestic responsibility is significant. This was stated in the case as it went to the Supreme Court. Did Justice Rehnquist talk about the overlap? He did. Oh, that's what I want to hear about today. The overlap with regard to... FMLA and paid leave. And paid leave. Yeah. He did not speak to that specifically, Your Honor. He did say that the most important thing Congress did was try to choose a remedy for gender bias in the workplace. This Court, as well, has tried to delineate the difference between the substantive rights and the prospective rights with regard to... that the employer can force the employee to take paid leave to substitute for FMLA leave. It is not required to stack FMLA leave after paid leave. Absolutely. It's absolutely true that this... Absolutely. And with adequate notice... Isn't that what happened here? No, Your Honor. The four issues that I believe were before the Court and could not be subject to summary judgment was, number one, that adequate notice. Mr. Hibbs received all kinds of notices, no doubt. And that magic language that you discussed... We can talk about notices. Look, they look totally adequate to me. But what difference does it make? He had no right. What would he have done differently? Let's say he had gotten adequate notice. What could he have done differently that would have made things better for him? The State of Nevada offered six months of unpaid leave, called nothing other than you would certainly have applied... If you say that in your brief, I saw that statement on page 49 of your brief. And you give no citation to it in the record. I have no idea what this statement is. You sort of throw it in. What is this unpaid leave? Where is the citation on the record to its existence? Ruth Jones, who is the head of personnel in her deposition, which is in the excerpts of record, stated that there had indeed... Why do you put something on this new brief and not give a citation? The only place you make a reference to the six months of leave is in the second sentence in the paragraph on page 14. Do you have your brief there? Yes, I do. No citation, nothing to it. No support for it. I believe you're correct, Your Honor. Was it cited in this report below? This was cited. This was not cited as well in the brief to the United States Supreme Court because it was what we believe our allegations that that was... We're not reviewing the Supreme Court. The Supreme Court had a different issue before it. It had to do with the 11th Amendment. I'm asking, was this presented to the district court below when Judge McKibben, in the enrolled organization, which we are now reviewing? Yes, it was, Your Honor. So where? We were only able to brief, Your Honor. We have never been able to have a hearing in this matter. And we briefed that. We didn't believe it was a critical issue at that time. Only to see what? We did not believe whether or not he had that particular six months, but whether or not he had the rights under the law. I'm sorry, under what was available from Nevada, and we cited the statutes that have made available those leaves. The state of Nevada has ten different acronyms for leave. I do not know what the specific acronyms put together. Well, I'm sorry, but you put something in there. He claims he could have taken six months of unpaid leave with a single sentence with no support. You said there was support for this in the record. Where is it? It is in Mr. Hibbs' deposition, and it is in Ruth Jones' deposition. I cannot give you the exact case number. Where is it in the extract of the records that we're asking? I understand. This is your argument? This is what you came here to argue? Not necessarily, Your Honor. There were four reasons. Without knowing what this kind of leave is, we can't make a decision as to whether this is the kind of leave that would have to be substituted under the— remember, FMRA says the employer can force the employee to use paid or unpaid leave in lieu of FMRA leave, right? Yes. So how do I know this six months leave wasn't also— Why didn't he ask for it? If he was entitled to six more months leave, why didn't he ask for it as an out-of-state law? Because he relied upon what his supervisor told him, which was that there was— Even if his FMRA leave ran out, if he's entitled to six months of unpaid leave under Florida law, okay, so fine, my FMRA leave has expired. Now I'm asking for my six months of unpaid leave. Your Honor, it's a combination of leaves. I'm asking—you said he had six months of unpaid leave. Did he ever ask for it? Yes, he did, Your Honor. When he first made his request, and always he made his request from August 1 to December 31 because he knew that was the critical time period. When they gave him notice, indeed, they said, we are granting you FMLA leave to be used intermittently between August 1 and December 31. When they sent him a notice on catastrophic leave, they said, you are being allowed catastrophic leave to be used intermittently between August 1 and December 31. But didn't they have reforms that said this will be substituted for FMLA leave? Yes, that magic language was used, Your Honor, and I have referred to it in many instances, that the notice they gave him was, during leave, you may be required to substitute unpaid leave for unpaid FMLA leave. They said that on the notice when they gave him FMLA leave. What does that mean? He's supposed to substitute FMLA leave for FMLA leave. They also told him that when they gave him the catastrophic leave, you will have to substitute paid leave for unpaid leave. What does that mean? He also got a notice, Your Honor— Also, did he ask for the leave? Did he say, gee, I don't understand what this means? Explain it to me? He believed he knew exactly what it meant, that he had to substitute any paid leave that he had been granted. Until he used it up, he could not then begin unpaid leave. As a matter of fact, he received a letter on November 3 from his supervisor, even though the court found that they had given him notice on October 1 that he didn't have leave. On November 3, they sent him a notice saying, Although you have been on approved FMLA leave and catastrophic leave, we're asking you to please get some help for your wife so that you can return to work on November 3. So if they recognized at that point that he was still on approved FMLA leave, they could not terminate him. And they did. They sent him that letter. They also sent him a letter saying that all eligibility workers had the right to the three kinds of acronym leave that I've stated in the briefing papers. Ruth Jones, the head of personnel, testified that no document is provided for eligibility workers so that they will know how to fill out their BTAs, which are timesheets. During his leave, the notices were sent to his office. He was on leave. Twice he received letters at home. That's when they walked to his home and personally handed him his discipline. I still don't understand what he could have done about it. Let's say that notices were inadequate. If the employer had an absolute right to say, Your FMLA leave is going to run as you use up catastrophic leave or whatever, and it looks to me like the federal law gives the employer an absolute right to do that. Notice or no notice, what difference would it have made? He would have returned to work, which he attempted to do twice, Your Honor, and they refused to allow him. As a matter of fact, when he finally had enough time to keep in mind, they gave him notice he had to return to work on November 3rd. I'm sorry, on November 6th that he had to return by November 12th, which was an intervening two weekend days and a holiday, and he couldn't get adequate care for his wife. But when he got a reasonable time to return to work, he tried to return to work on December 8th. He was escorted from the building by his supervisor. Again, at his pre-disciplinary hearing, he attempted to return to work, said, Your complaint is I have not returned to work. I will return to work. I will clock in today. And they said, No, you have already been terminated. They did not allow him to return to work. He made two attempts at least. I'm sorry. I'm just trying to understand. What I asked you was, let's say the notice was somehow inadequate, but the employer has an absolute right, as I read the statute, to require his ephemeral leave to run concurrent with his catastrophic leave. Okay? You shake your head. I'm sorry. As I read the statute, they could require him to have his ephemeral leave running while he's taking catastrophic leave. And let's say, in fact, you're right. They somehow did not notify him adequately of this. The fact remains that they're entitled absolutely to do this. And what is the harm? Well, the harm is he will return to work. But at the end of this period, which they were absolutely entitled to take, they tell him to come back to work, and he won't. He doesn't. They gave him November 8th, they gave him a notice, and he doesn't come back. But he did attempt to return to work on two occasions, Your Honor. And moreover, they can re- Well, there's no occasion. They did give him a chance to come back to work after the time had run. November 8th. On November the 12th. Okay, November the 12th. And he didn't come back to work then. It was not a reasonable time, Your Honor. They gave him one working day to acquire suitable circumstances for his wife, which was impossible, and they knew that. You're right about that, maybe or not. But the question is, what would adequate notice, in your view, how would that have changed any of that? Adequate notice, Your Honor, would have meant that he knew from the beginning that there was a policy, which there was never notice of. As Myla Florence testified, as the director of the department, there had never been an adopted policy. He had witnessed two women who had taken more than a year of work and came back to their-more than a year of leave and had come back to their position. Moreover, one woman died in her job as a full-time employee and had been off for more than a year. So this was the experience he had with leave at the state- But he never knew that she would come back to work. She did not, we hope. On the other hand, it is very important that he knew what the circumstances were. They testified they had not given him a manual, that he did not know. So notice was important, but there were two other reasons. In absence of the knowledge of the statute, is the school's fault, not his fault? The state's. Is that what you're saying? Yes. Okay. Does the statute require anything of the school in particular that bothers you? The state of Nevada has a statute, and that statute says- Relating to federal law? Relating to the Family Medical Leave Act. Okay. And it says that, number one, you must give an accounting. He asked for an accounting on three separate occasions, and none was given to him until this litigation began. Was this in the middle of the leave or after the leave or before the leave? When the controversy came up and he believed he still had leave- After the leave, after termination, right? No, before termination. As soon as they sent him a letter saying- and they went to his home and handed him a letter saying, you're being disciplined for not returning to work on November 6th. He said, but I still have leave. Where's the accounting? I believe that I still have leave. And she said, well, I just don't know. So on the 12th when- It was after the termination letter. And the termination letter didn't come until November the 13th, Your Honor. I thought the record says on November 6th a letter was hand-delivered to his residence indicating that he had to come back to work on the 12th. That was not a termination letter, Your Honor. That was a disciplinary notice that he had to return to work. That's correct. And that he was to return to work on the 12th of November. Which he did. Which he did not. He could not. It was not a reasonable time. Whatever happened prior to November 6th, he had a chance to return to work on the 12th. Let's say the notices were inadequate or whatever, but eventually he did get notice that it was time to come back. I mean, I'm not saying the notices were inadequate, but assuming they were, what could he have done differently? I mean, he was given a chance at the end to come back to work, so we know that happened. What could he have done differently? He could not, within a reasonable time. They did not give him a reasonable time to return to work. They certainly knew the circumstances. They knew that he had six days. Did he ask for more time? Did he say, look, I can't come back on the 6th. I'll come back on the 8th or the 12th? He asked to come back within a reasonable time when he could get help for his wife, and that was December the 8th. When did he do that? I'm sorry? When did he do that? He returned on December the 8th. He had spoken with Mrs. Firpo, his supervisor, when she came to his home and said, I cannot return that quickly because my wife needs full-time care. There's never been a dispute. Is this the kind of care that the visiting nurse service renders? No. Mrs. Hibbs had a bolt in her throat so that if she were to fall, it would puncture her esophagus and she would die. Nurses don't do that? No. She also had suicidal tendencies because of the problem with the medication, and it was critical that he stay with her. The psychiatrist wrote a note, and the state has never disputed that, that he had to be there. It was him, the family, and he was taking his responsibility. Just as Justice Rehnquist admitted, the Congress tried to say it shouldn't be always the women having to take the responsibility. We want across the board leave so it's available for everyone. And prior to this, men didn't take leave, and they tried to remedy the problem. And when Mr. Hibbs came forward and tried to do, to take the family responsibility, he was punished. You are over your time. Thank you. Good morning. I am pleased to court. I'm Chuck Hilsebeck, and I represent the appellees in this matter. And the appellee's position is straightforward and twofold. One, the appellees gave Mr. Hibbs all the notice and complied with all the requirements of the FMLA, and that he received all the substance benefits of the FMLA, and I believe there are no material issues of fact regarding that. He applied for FMLA leave early on, and he claims that the urging of the supervisors. Is that correct? He applied for FMLA early on. Whether it was at the urging of the supervisors is an open question. But he did make a phone call on April 14th. Well, just so you understand the rules here on appeal, if it's an open question, then we treat it as true because you want a summary judgment. So just so we don't waste any time. Okay. I don't know that that's even a material fact, but I'll go with that. He called. If I'm asking about it, you can assume it's material. Okay. Okay. Okay? Okay. Would you like me to run you through the chronology? I'd like you to answer my question. You'll have to remind me again. See, that's what happens. Listen to the question. He applied for FMLA leave early on at the urging of the supervisor. Is that what the record reflects? He did apply for FMLA. He did apply early on. Okay. Let's say he had not applied for FMLA leave. Let's say he had said, I just want two weeks of vacation. Would the FMLA leave have started at that point? No, unless there was an FMLA qualifying event, and there are several different scenarios. In this case, Mr. Hibbs needed to care for a family member, and that's a qualifying event. How does an employer know? He comes in and says, I need two weeks of vacation. He doesn't explain why. Okay. A personal leave or whatever. Then he, more than likely, if he had the leave approved, he would be approved for vacation leave, assuming it fit everyone's schedule, and he could do with that two weeks anything he wanted to, including care for a sick family member. And that would not run against his FMLA? The employer is not on notice, and it probably wouldn't run against it. If the employer was on notice and he wanted to request FMLA, they could designate that as an FMLA qualifying event. Even if it was vacation? He can take his vacation leave, but if he does it for an FMLA qualifying event, the employer then has the option of designating that leave for that purpose as FMLA leave. If he chooses to take a catastrophic leave, that is necessarily an FMLA triggering event? Not necessarily. Catastrophic leave is a bank of leave that is donated by other employees, sick leave, and it's a way for employees to be in pay status while they're away from their job. And it's usually associated with some sort of catastrophic event, and that catastrophic event may or may not be an FMLA qualifying event. But in any event, they would have to disclose what it is. They would have to say about that catastrophic leave. Yes, catastrophic leave is at the discretion of the employer. And in doing so, they would be notified by the employer, and if it's the kind of event that would trigger FMLA leave, the employer would automatically run the clock on FMLA. Yes, give the employee notice and begin the FMLA clock. Yes, Your Honor. Now, what do you rely on for the ability of the employer to do that? 29 U.S.C. Section 2612B2. I'm reading from my brief, but it's a statute, and I can read the statute for you if you'd like. It's on page 17 of my brief at the top of the page, and it says… That's nice, but what does the statute say? It says, An Eligible Employee May Elect… What are you reading from? I'm reading from my brief at page 17. What section? The section of my brief is… Statute. Statute. It's 29 U.S.C. Section 2612B2. Which is part of the ultimate provision. And I believe… I'm reading from my brief, but… The statute starts, If an Employer Requests Intermittent Leave. This is where my section starts. This is your section. I have it in my brief, Your Honor. I do not have it in the statute, but I can read what I believe to be this section, and maybe you can… Well, I guess if that's the best you can do, that's the best you can do. I don't have the statute in front of me, but it reads, An Eligible… Why don't you come to court without the key statute? I'm sure it's in my papers, but I have it quoted here, and that's what I'm relying on. All right. Would you like me to read it, Your Honor? Yeah, go ahead. It says, An Eligible Employee May Elect… My stuff, it says, If an Employer Requests Intermittent Leave. So I don't know where you're reading from. See, I'm actually looking at the actual statute. Okay. So are you reading from the middle? An Eligible Employee is part of the quote? It begins, An Eligible Employee May Elect or an Employer May Require the Employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under sub-paragraph A, B, or C of subsection A-1. But which category does that catastrophic leave fall into? Is it vacation? No, it is not, Your Honor. What is it? Read those three categories again. It is a type of leave that is… No, read the statute. May substitute… May substitute any of the accrued paid leave. Accrued paid leave. Paid vacation leave, personal leave, or family leave of the employee. Okay, so let's take the four categories of things in the statute. What was the first one again? Accrued paid vacation leave. Okay, is catastrophic leave accrued vacation leave? No, Your Honor. Okay. Isn't it an assignment of another employee's paid vacation leave? Yes, Your Honor. Okay. Well, I don't know. You tell me. If I had to guess, I'd say it's probably personal leave or maybe family leave. It's not listed in here. It is a type of leave. Then how can you substitute it if it's not listed in the statute? Because it is a paid leave. The statute provides four categories of things you may substitute for. Right. If you don't fit in one of those four categories, the statute doesn't apply. Right. Which one of those four categories does catastrophic leave fit into? Well, personal leave. Personal leave? It's leave that this I don't know. I don't know. What is the definition of personal leave? I don't know. It's a leave. I can describe cat leave for you if you'd like me to. It's leave that's donated from other employees. I don't need a guided tour. Now, this is a statute you're relying on, okay? What I need for you to explain to me, since you rely on the statute, you have to explain to me and you have to make an argument as to why what your client did was justified. And to do that, you have to find one of those four categories in which the catastrophic leave fits into and tell me why it fits into it. Because if it doesn't fit into one of those four categories, you can't substitute. There's no authorization for forcing an employee to take the family leave concurrently with a settler. So I'm asking. You may be right. It may fit in one of those four categories, but you believe it never bothers to explain what it is. So I'm asking you what it is. Well, it could be personal leave. You know, it could be. Tell me why it is personal leave. What is personal leave? And how is it defined? And why is this personal leave? I would say that cat leave is personal leave because it's leave that that individual employee receives as a benefit from their employer. I'd also say it's family leave if it was used, that cat leave was for a particular purpose to benefit that employee's family. All cat leave is is a payment. It's in a way to pay an employee when the employee doesn't have any other accrued vacation or sick leave available to them and they're away from the workplace and they can still receive a paycheck. That's the only thing cat leave does. It allows the employee to be paid. It doesn't seem to fit very well in those four categories, and Congress didn't say, didn't use any generic description, like, say, any other kind of paid leave that would cover one of them. They actually used four distinct categories, and I just wasn't. Actually, I only count three here. I count paid vacation, personal, and family leave, but the statute, I mean the regulation that administers this where we took the language for our leave forms, that says that they can substitute other forms of paid leave and does not restrict it to this. I see. Which is the regulation? It is. Let's see here. Is it 29 CFR 825-700? Yeah. No, it's not 700. It's the appendix. It's the form. It says the federal form says you may substitute accrued paid leave or we will or will not require it to substitute accrued paid leave for unpaid FMLA leave. I didn't understand that at all. When an employee receives CAT leave, an approval for CAT leave, he has that number of hours on the books, and that's paid leave. And, you know, to me, and maybe I'm missing the point, but to me the point of this case is that Mr. Hibbs was allowed to be away from the workplace far in excess of his benefit under the FMLA, and when that was exhausted, he was asked to return and didn't want to come back. And, finally, they were forced to terminate him. Whether we gave our notice, whether that notice was proper or not, we argue that it is, but assuming it wasn't, the fact that he was gone from the workplace in excess of five months and would not come back when he was asked to do so, he was not covered by the FMLA at that time. He had received the substantive benefit, and I thought that the state was very generous with him and giving him lots of notice and lots of time to come back. They began to tell him actually on the middle of August that his leave would run out on October 1st. Around the first of October they sent him a letter. The middle of October he had a personal conversation, came into the office, and he was told his leave was out and he needed to make some arrangements. On the 3rd of November they had a personal conversation, and he was told that. On the 6th of November he had a letter that was sent to him telling him to come back by the 12th. When he didn't, he was given a letter of reprimand and told to come back to work immediately, and I think he signed for it on the 14th of November. When is the last time he took a comeback and retained his job? I think he... I'd have to speculate, but probably certainly before December 8th. December 8th he was served with a specificity of charges indicating they intended to terminate him. Now whether he could come back between then and the 22nd of December, but certainly before he was served with a specificity of charges, he could have come back. And in my brief there's a timeline with a number of days in it. He had 56 days, something like that in there, where he could have come back. This isn't a case where the state rushed a judgment and terminated somebody because they were a day late from their FMLA leave. This is a case where they were more than generous with Mr. Hibbs. He requested intermittent leave between May 1st and December 31st. He began using it intermittently. From around the 1st of August he does not return to the workplace. They work with him. They give him more leave. They give him cat leave so he can get paid, not so he can be away from the time from the workplace longer, but so he can get paid for his absence because he was out of accrued paid leave. They give him plenty of notice that it's coming up. Try and work with him, and it doesn't happen. And in his deposition, contrary to what was said today, that he would have returned to work. In his deposition he indicates that he couldn't have returned to work, and he indicates what he would have done differently is he would not have used his FMLA leave until all of his other leave was gone. And that's not his choice, Your Honor. Thank you. Thank you very much. Thank you. Your Honor, time is up. The case is argued. We'll stand submitted.
judges: Beezer, Kozinski, Carney